IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Smith,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>Criag Apker,<br><br>　　　　　Respondent. | No. CV 11-577-TUC-FRZ (BPV)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Petition), filed on September 12, 2011. (Doc. 1) Petitioner, Raymond Smith, claims his constitutional rights were violated when he was convicted of a disciplinary violation without due process, resulting in, among other things, the loss of good time credits.

Before the Court is the Petition with exhibits (doc. 1), and Respondent's return with accompanying exhibits (doc. 13) (Answer). Petitioner did not file a reply.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation. (Doc. 15)

For the reasons discussed below, the Magistrate Judge recommends that the District Court enter an order dismissing the Petition for failure to exhaust administrative remedies.

//

//

## I.     PROCEDURAL BACKGROUND

Petitioner is presently incarcerated in the United States Penitentiary (USP) - Tucson. (Petition, at 1; Answer, Ex. A, Attachment 1, Talplacido Declaration). This was also his place of incarceration at the time he filed his Petition. (Petition, at 1) At the time of the incidents which resulted in the disciplinary proceedings at issue in this Petition, Petitioner was housed at the Federal Correctional Institution (FCI) II, in Victorville, California. Petitioner contends that his constitutional rights were violated when he was convicted of a disciplinary violation without due process. Petitioner's disciplinary conviction resulted in the loss of good time credits. Smith is currently serving a 400-month sentence of incarceration for conspiracy to distribute narcotics, and attempt to possess with intent to distribute narcotics, and is projected to complete this sentence on November 19, 2030, via Good Conduct Time Release. (Answer, Ex. 1, Attachment 2)

## II.     DISCIPLINARY HEARING AND PROCEEDINGS

On October 29, 2009, Correctional Officer Haight randomly searched Smith's cell and located a homemade sharpened icepick type weapon approximately 6 ½ inches long located inside a sealed toothpaste tube in Smith's locker. (Answer, Declaration of R.A. Byrd, Attachment 2, Incident Report, ¶ 11.) Smith claimed the weapon was his. (*Id.*) On the same date, Officer Haight wrote Incident Report #1937167, charging the Petitioner with possession of a weapon in violation of Code 104. (*Id.*, ¶¶ 9-10, 13)

On October 30, 2009, Lieutenant K. Grady, delivered a copy of the Incident Report to Smith and advised him of his right to remain silent during the investigation. (*Id.*, ¶¶ 14-16, 22-23) Pending a brief delay while Lieutenant Grady waited for the FBI to determine if they would prosecute the matter, investigation of the incident commenced on October 31, 2009, after the FBI declined prosecution. (*Id.*, ¶ 24) Petitioner admitted to having the weapon. (*Id.*, ¶ 24-25) Lieutenant Grady concluded that Smith had been properly charged and recommended that Smith remain in administrative detention, and that the incident be referred to the Unit Disciplinary Committee (UDC) for further processing. (*Id.*, ¶ 27)

Smith commented to the UDC regarding the incident that he had been given the

weapon during the riot, but had forgotten that he had it. (*Id.*, ¶ 17) The UDC referred the inmate to the Disciplinary Hearing Officer (DHO) for further action, and recommended that Smith lose thirty (30) day phone privileges and be placed in disciplinary segregation for thirty (30) days. (*Id.*, ¶ 20)

On November 24, 2009, DHO R.A. Byrd, conducted a disciplinary hearing. (*Id.*, DHO Report, ¶ IX.) Petitioner waived his right to a staff representative, (*id.*, ¶ II.A.), requested no witnesses (*id.*, ¶ III.C.1) and did not have any documentary evidence to submit (*id.*, ¶ V). Petitioner admitted the charges, stating "yes, it's mine, I forgot I had it." (*Id.*, ¶¶ III.A&B)

The DHO found Petitioner committed the prohibited act of possession of a weapon, in violation of Code 104. (*Id.*, ¶ V) The DHO based her findings on the reporting officer's statements, Petitioner's statements, and the photograph of the weapon, which she found capable of inflicting serious life threatening injuries. (*Id.*) The DHO sanctioned Petitioner to a loss of 40 days good conduct time, 60 days of disciplinary segregation, one year loss of commissary privileges, and one year loss of personal property. (*Id.*, ¶ VI)

On December 21, 2010, almost one year from the date of the DHO decision, the Petitioner filed an administrative remedy with the Regional Office for incident #1937167 (Answer, Ex. A, Talplacido Declaration at ¶6; Attachment 4, at15, line 7; and Petitioner's Ex. A) The appeal was rejected based on untimeliness. (*Id.*, ¶ 6; Attachment 4, at 11) The Petitioner was told to "provide staff verification that you are not responsible for the untimely filing of this appeal." (*Id.*) No additional appeal in this matter was filed with the Regional Office. (*Id.*, ¶ 6; Attachment 4, at 15)

On March 15, 2011, the Petitioner filed an administrative remedy for incident #1937167 with the Central Office. (*Id.*, ¶ 7; Attachment 4, at 13; and, Petitioner's Ex. D) It was assigned administrative remedy identification number 632042-A1. (*Id.*) The appeal was to the General Counsel, level A-1. (*Id.*) The appeal was denied because it was to the wrong level. (*Id.*, Ex. 1, Talplacido Declaration at ¶ 7) The Petitioner did not file any other additional administrative remedies for this incident #1937167. (*Id.*, ¶ 8; Attachment

4, at 15)

### III.  DISCUSSION

#### A.  Jurisdiction

A federal court may not entertain an action over which it has no jurisdiction. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). Writ of habeas corpus relief extends to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1) & (3). A prisoner who wishes to challenge the manner, location, or conditions of a sentence's execution must bring a petition pursuant to § 2241 in the custodial court. *Hernandez,* 204 F.3d at 864, and must file the petition in the judicial district of the petitioner's custodian. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980). This Court has territorial jurisdiction over the case in question since Petitioner was incarcerated at USP Tucson when he filed his Petition, and named the appropriate warden as respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004)(Whenever a §2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

In the instant case Petitioner is seeking relief with respect to disciplinary proceedings that, in part, resulted in the loss of good time credit while incarcerated at USP-Tucson. Petitioner is challenging the legality of the manner in which his sentence is being executed. Thus, the Petition is properly before this Court under 28 U.S.C. §2241.

#### B.  Exhaustion

There is no statutory requirement, pursuant to 28 U.S.C. § 2241, that federal prisoners must exhaust administrative remedies before filing a habeas corpus petition in court, thus it is not a jurisdictional prerequisite. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995). Nevertheless, federal courts "require as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other*

*grounds Fernandez–Vargas v. Gonzales*, 548 U.S. 30, 36 (2006). Thus, while "courts have discretion to waive the exhaustion requirement when prudentially required, this discretion is not unfettered." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement where administrative remedies are inadequate, futile, or pursuit of them would cause irreparable harm. *Id.* at 1000-01; *see also Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (*per curiam*) (waiving exhaustion where the initial request for an administrative remedy was denied based on official Bureau of Prisons (BOP) policy and further appeal would almost certainly have been denied based upon the same policy.)

Accordingly, if the petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding to court," *Brown, 895 F.2d 535*, unless such remedies are no longer available, in which instance he may have procedurally defaulted on his claims, *see Francis v. Rison*, 894 F.2d 353, 354-55 & n. 2 (9th Cir. 1990) (applying procedural default rules to administrative appeals); *see generally Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Tacho v. Martinez*, 862 F.2d 1376, 1378 (9th Cir.1988). If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994)(citing *Francis*, 894 F.2d at 354; *Martinez*, 804 F.2d at 571). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray*, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to *pro se* litigants).

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The BOP's Administrative Remedy program requires the prisoner to submit

- 5 -

a formal written Administrative Remedy request within "20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R.§ 14 (a)-(b). Where the prisoner seeks to appeal a DHO finding, the formal request is to be submitted directly to the appropriate regional office. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal . . . to the General Counsel within 30 calendar days of the date the Regional Director signed the response." § 542.15(a). The time limits may be extended upon a showing of a valid reason for the delay. *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.*

In this case, the DHO entered the finding against Petitioner on December 31, 2009. Accordingly, Petitioner was required to submit his Administrative Remedy request to the Regional office by January 20, 2010, but he did not do so. He filed his first Request on December 21, 2010, approximately eleven months past the deadline. (Answer, Talplacido Declaration, ¶ 5) On December 23, 2010, the request was denied because it was untimely, and the Petitioner was asked to "provide staff verification that you are not responsible for the untimely filing of this appeal." There is no record of the Petitioner providing any basis for the untimely filing. (*Id.*)

On March 15, 2011, Petitioner filed an Administrative Remedy request with the Central Office. (*Id.*, ¶ 6) The request was denied on March 24, 2011 because he had filed his request with the wrong level. (*Id.*) The records do not show that the Petitioner re-filed his administrative remedy with the correct level or any level, after it was rejected for filing at the wrong level. (*Id.*, ¶ 7)

The Petitioner claims that he did exhaust his administrative remedies and attaches documents to support his claim. (Petition at 2) These documents do not support a claim that Smith timely pursued his administrative remedies. Petitioner's Exhibit A is an appeal form signed with the name Raymond Smith regarding incident #1937167 and dated December 10, 2010, clearly beyond the 20 day deadline. Petitioner's Exhibit B states in the body of the document that it is concerning Incident Report Number 2046392. (*See* Petitioner's Exhibit B, at1.) This is a completely different disciplinary action for which the Petitioner has filed a separate § 2241 in the case of *Raymond D. Smith v. Apker*, CV-

- 6 -

11-328-TUC-FRZ-BPV, District of Arizona. It is not relevant to the instant case. Petitioner's Exhibit C is not relevant to the issue of exhaustion of administrative remedies. Petitioner's Exhibit D appears to be an appeal form for incident #1937167 directed at the Central Office that was completed on February 17, 2011, consistent with Respondent's assertion that Petitioner's administrative appeal was untimely and filed with the wrong office.

The purpose of requiring inmates to file administrative remedies is to allow prison officials the opportunity to resolve problems and obviate the need for litigation. *Ruviwat v. Smith*, 701 F.2d 844,845 (9th Cir. 1983). It allows for the development of a factual record and for the agency to correct any errors, in addition to conserving court time. *Id*. Further, the administrative remedy procedure was implemented, in part, to conserve the resources of federal courts. *Id*. Petitioner did not allow the administrative remedy program an opportunity to address this issue, and he has not administratively exhausted this issue. Exhaustion is required prior to filing a lawsuit. Petitioner failed to exhaust his claims, and they are procedurally defaulted.

Petitioner has not sufficiently demonstrated that he exhausted administrative remedies or that exhaustion would be futile. Neither has Petitioner raised any grounds that would support a finding of cause and prejudice sufficient to excuse a procedural default. Allowing petitioner to bypass the exhaustion requirement on this issue would only encourage Petitioner and other prisoners to deliberately bypass the BOP's administrative remedy process.

Accordingly, Petitioner's claim should be dismissed without prejudice for failure to exhaust administrative remedies. Alternatively, the Magistrate Judge addresses the merits of the claim below.

C.   Merits

   1.   *Due Process*

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. Accordingly, they have a due process interest in the disciplinary proceedings that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "Due process

in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987)(citing *Wolff*, 418 U.S. at 563-66.). "The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citing *Wolff*, 418 U.S. at 566.) Once these *Wolff* procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by "some evidence." *Superintendent. Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1984) ("The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.").

Petitioner asserts that the he was not given a 24-hour notice prior to the hearing before the DHO, contrary to Program Statement (P.S.) 5270.08 and CFR 541.17.[1]

### 1. *Notice*

In the federal prison system, the BOP has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. § 541.10 *et seq*. These guidelines largely track the due process requirements established by the Supreme Court in *Wolff. See Young v. Kann*, 926 F.2d 1396, 1404 (3rd Cir. 1991). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. § 541.14. After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. § 541.15. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the DHO

---

[1] Presumably Petitioner is referring to 28 C.F.R. § 541.17 (2010). The regulations promulgated in this section have, since the time of Petitioner's offense been revised and renumbered. *See* 75 FR 76263-01. The regulation directing the timing of DHO hearings is now found at 28 C.F.R. 541.8, Inmate Discipline and Special Housing Units, Discipline Hearing Officer hearing. This Report and Recommendation will refer to the 2010 version of the regulations in existence at the time of Petitioner's disciplinary proceeding.

- 8 -

for further hearing. 28 C.F.R. § 541.15(f). The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. § 541.18. The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.17.

Throughout this hearing process the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.17(a). The inmate is also entitled to assistance at DHO hearings. In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. § 541.17(b).

As to Petitioner's claim that the disciplinary procedures violated his due process rights because he was not given notice, specifically by the Warden of the facility, 24 hours prior to the hearing, Petitioner's contentions fall short. Pursuant to both BOP policy and federal regulations, an inmate is to be given written notice of a charge no less than 24 hours before the DHO's hearing. *See* P.S. 5270.08 and 28 C.F.R. § 541.17. The Incident Report was written by Correctional Officer Haight on October 29, 2009, at approximately 10:05 p.m. The written notice was provided to Petitioner on October 30, 2009, at approximately 1:00 pm by Lieutenant Grady. This notice was provided to the inmate well over 24 hours before his appearance before the DHO. Though Petitioner states that the office of the Warden is required to present this notice, and that in this case this was not done nor acknowledged by the office of the Warden, there is no provision in the program statement or the regulations that prohibits this duty from being delegated. *See* 28 C.F.R. 541.17 (2010). In fact, the Program Statement specifically contemplates that notice will be provided by "staff." *See* P.S. 5270.08.

Additionally, even if it were a violation of prison regulations for the Warden to fail to personally notify Smith of the charge, a violation of a BOP regulation does not rise to a due process violation. Indeed, due process does not impose a requirement that notice be provided personally by the Warden. As noted above, the Supreme Court held that the Constitution requires compliance with minimal federal due process standards and

explained that these minimal requirements are: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. *Wolff*, 418 U.S. at 563-67. As these requirements were met in this case, Petitioner's dissatisfaction with the process of his notification does not implicate due process concerns, and Petitioner has not in fact articulated any way in which he was harmed by this delegation of the notification procedures. Moreover, the relevant inquiry is not "whether the prison complied with its own regulations," but whether Plaintiff was "provided with process sufficient to meet the *Wolff* standard." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

Furthermore, the Court has reviewed the incident report and the DHO report and finds that the due process requirements of a prison disciplinary hearing, as established by *Wolff, supra,* were met in this case. The Petitioner received notice well in advance of the hearing. The hearing was conducted by DHO R. A. Byrd, whom the Petitioner does not dispute was an impartial officer. Petitioner was allowed the opportunity to present witnesses and documentary evidence. He was also afforded an opportunity to have a staff representative. During the hearing, Petitioner admitted the violation. The DHO agreed with the inmate and found him to have committed the prohibited act of Code 104. Petitioner was given a copy of the DHO's report which contained a written statement of the evidence relied upon and the reasons for the sanctions on January 4, 2010.

Accordingly, the Court finds that Petitioner's claim that he was deprived of due process is without merit and fails to provide a basis for relief.

**IV.      RECOMMENDATION**

The Magistrate Judge recommends that the District Court, after its independent review, enter an order DISMISSING the Petition.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served

with a copy thereof. Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.

If objections are filed the parties should use the following case number: **No. CV-11-577-TUC-FRZ.**

**Dated this 11th day of April, 2012.**

_____
Bernardo P. Velasco
United States Magistrate Judge